Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1735 | **DATE** | 5/7/2002 |
| **CASE TITLE** | Roberts vs. NLSB | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendants' motion for summary judgment on count I [20-1]. Defendants' motion is granted. All remaining state law claims are dismissed. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 0 8 2002 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. District Court | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAY 0 8 2002 | |
| | courtroom deputy's initials | 02 MAY -7 PM 3:10 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEROME ROBERTS and MELODY ROBERTS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 01 C 1735<br>)<br>) HONORABLE CHARLES R. NORGLE<br>) |
| NLSB, as Trustee, u/t/a #2024; RIVER OAKS WEST JOINT VENTURE; LAWRENCE CAPISTA; ROBERT H. SCHENK CHARLES SHARP; and OTHER UNDISCLOSED PARTNERS<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

DOCKETED
MAY 0 8 2002

**Charles R. Norgle Sr., District Judge**

Before the court is Defendants' motion for summary judgment on Count I of Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 56. For the following reasons Defendants' motion is granted.

### I. Background [1]

This cause of action arises out of a proposed sale of land, specifically Lot 24 of the Manor II subdivision in Shorewood Illinois ("Lot 24"), the facts of which are not greatly contested. Plaintiffs, Jerome Roberts and Melody Roberts, a mixed race couple, attempted to purchase Lot 24 from Lawrence Capista ("Capista"). Capista is an agent acting on behalf of NLSB the legal owner of the land, and River Oaks West Venture the group developing the land.

---

[1] All facts are taken from the parties Local Rule 56.1 statements, accompanying briefs and the final pretrial order. Disputed facts are noted in the text.

Lot 24 is located in a new subdivision, directly adjacent to the Manor I subdivision in Shorewood, Illinois. There were no restrictive covenants recorded against Lot 24 at the time the parties initially began discussions about purchasing the lot, as the subdivision had not yet been plotted. The Roberts were informed by Defendants that the new subdivision, Manor II, would have essentially the same restrictive covenants as Manor I.

On April 5, 1999, the Roberts were provided with a contract to purchase Lot 24 which included a Rider. The Rider provided that if the plat, a detailed listing of the entire subdivision including all covenants and restrictions, was not recorded by July 1, 1999 either party could cancel the contract by giving written notice. The Roberts took the contract and Rider home to review. After reviewing the contract and Rider, the Roberts had an attorney draft an additional Rider to the contract. The second Rider provided that no covenant, contractual limitation, home owners association rules or regulations, or other private use limitations exist, or are contemplated that would prevent the Roberts from running a children's day care center out of Lot 24. This second Rider was especially important to the Roberts because Melody Roberts was running a day care center out of her current residence and wished to maintain her business. After lengthy discussions and correspondence with the Defendants, the Roberts signed a contract to buy Lot 24 for $105,000.00 plus $5,000.00 earnest money. The contract was completed and signed with both Riders attached on April 26, 1999.

On December 15, 1999, Defendants recorded the plat for the Manor II subdivision along with the second amendment to the Declaration of Covenants, Restrictions, Equitably servitudes, grants and Easements ("Declaration"). After Defendants recorded the plat for Manor II they asked the Roberts to close on the land sale of Lot 24. Melody Roberts was concerned that the new covenants

2

and restrictions would not allow her to operate her day care center on Lot 24. Melody Roberts applied to the Village of Shorewood for a conditional use permit, on February 9, 2000. The Village of Shorewood turned down her request and the Roberts filed suit, which is currently pending in the Northern District of Illinois, case no. 00 C 6854. Melody Roberts also requested that Defendants change the Declaration to allow her to operate a child day care center out of the home. Defendants refused to change the Declaration and on February 9, 2000 cancelled the contract pursuant to the conditions of the first Rider dated April 5, 1999.

The Roberts' brought a six count complaint against Defendants. Count I of the complaint, the only claim for relief over which this court has original jurisdiction, alleges that Defendants refused to sell the Roberts the property based upon the fact that they are a mixed race couple, in violation of 42 U.S.C. § 3604(a). The other five counts are supplemental state law claims. Defendants now move for summary judgment on Count I of the complaint pursuant to Federal Rule of Civil Procedure 56, which, if the court grants, would relieve the court of jurisdiction over all supplemental state law claims.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague,

Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events.") A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994). "In deciding a motion for summary judgment, the court will conclude that there is no genuine issue as to any proposed finding of fact to which no response is set out." Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997); Fed.R.Civ.P. 56(e); Local Rule 56.1. Under Local Rule 56.1, the court deems admitted all statements of fact that Defendants present and support with admissible evidence, to which Roberts fails to respond.

**B.     42 U.S.C. § 3604(a)**

Count I of the Roberts' complaint alleges that Defendants refused to sell Lot 24 to them in violation of § 3604(a), based upon the fact that they are a "mixed race" couple. Section 3604 of the Fair Housing Act targets discrimination in the sale or rental of housing and other prohibited practices, making it unlawful to "refuse to sell ... after the making of a bona fide offer ... to any person because of race, color, religion, sex, familiar status, or national origin." 42 U.S.C. § 3604(a).

"The elements of familiar discrimination follow closely the elements of employment discrimination." Kormoczy v. Secretary, U. S. Dep't of Hous. & Urban Dev.ex..., 53 F.3d 821, 823 (7th Cir. 1995). The Roberts have the burden of establishing Defendants intended to discriminate against them because of race, and can prove this discriminatory intent with either direct evidence or

indirectly through the McDonnell Douglas burden shifting analysis. See Allen v. Muriello, 217 F.3d 517, 520 (7th Cir. 2000); see also Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1529 (7th Cir. 1990) (holding that the mental element required to make out a disparate treatment claim under Title VIII of the Fair Housing Act is the same as that required under Title VII of the Civil Rights Act of 1964); see also Kormoczy, 53 F.3d at 824 (7th Cir. 1995) (noting that plaintiffs may use the McDonnell Douglas framework to make out claims under Title VIII of the Fair Housing Act). The court looks at both of these methods in determining if Roberts can establish the necessary discriminatory intent, in turn.

### a. Establishing Discriminatory Intent Directly.

In order for the Roberts to establish that Defendants had the necessary discriminatory intent directly, the Roberts may use direct or circumstantial evidence. Under the direct method, "plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis of an inference of intentional discrimination." Huff v. Uarco Inc., 122 F.3d 374, 380 (7th Cir. 1997) (citing Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). "Direct evidence is that which can be interpreted as an acknowledgment of defendant's discriminatory intent." Kormoczy, 53 F.3d at 823 (7th Cir. 1995). Plaintiff must be able to show the proverbial "smoking gun" in order to prove discriminatory intent through direct evidence. Cavalieri-Conway v. L. Butterman & Assoc., 922 F.Supp. 995, 1003 (N.D.Ill. 1998).

The Roberts may also use circumstantial evidence to show Defendants' discriminatory intent directly. The types of circumstantial evidence that the Roberts can present are: "suspicious timing, ambiguous statements, behavior toward or comments directed at other [people] in the protected

5

group, and other evidence from which an inference of discriminatory intent might be drawn . . ." Huff, 122 F.3d at 380.

The Roberts have no evidence, direct or circumstantial, that directly demonstrates Defendant's discriminatory intent. The Roberts have no evidence of the proverbial "smoking gun," regarding Defendants' discriminatory intent. Defendants never said anything that could remotely be construed to show discriminatory intent directly. In fact, based on the Roberts' pleadings and depositions, both Jerome and Melody Roberts admit that they have never heard anything amounting to racial animus from Defendants. (See Defs.' M. for Summ. J., Ex. C pg. 67, and Defs.' 56.1 statement Ex. D pg. 102.) Both Plaintiffs admit, the only statements regarding, or even alleging discrimination came from the local newspapers, Operation Push, and other third party outside sources. The Roberts cannot establish a claim based on discriminatory intent directly based on this evidence.

Furthermore, there is no circumstantial evidence that supports the Roberts' claims based on discriminatory intent. The timing of Defendants' refusal to close on the property is not suspicious. Defendants' refused to close on the property only after both parties and the Village of Shorewood became embroiled in a conflict over Melody Roberts' ability to run a child day care center from Lot 24. The Roberts have been unable to proffer any evidence in support their claims that Defendants' made any ambiguous statements, exhibited any behavior or made any other comments towards the Roberts or any other person in any protected class. Therefore, the Roberts cannot establish that Defendants had any discriminatory intent directly and must attempt to establish Defendants' discriminatory intent indirectly. The court now turns to the Roberts' proffer of evidence, or lack thereof, in determining if Defendants had any discriminatory intent in refusing to close on Lot 24.

6

b.  **Establishing Discriminatory Intent Indirectly**

In order for the Roberts to show Defendants discriminatory intent indirectly they must use the McDonnell Douglas burden shifting analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). Under the McDonnell-Douglas method of proving discrimination, a plaintiff must first establish a prima facie case of discrimination. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998). Under 42 U.S.C. § 3604, a plaintiff establishes a prima facie case by showing that 1) plaintiff belongs to a minority; 2) the defendant was aware of it; 3) the plaintiff was ready and able to accept defendant's offer to purchase the property; and 4) the defendant refused to deal with plaintiff. Hamilton v. Svatik, 779 F.2d 383, 387 (7th Cir. 1985)(citing Kaplan v. 442 Wellington Cooperative Bldg. Corp., 567 F. Supp. 53, 56 N.D.Ill. 1983)). The burden then shifts to the defendant to show that he acted without any discriminatory intent. Hamilton, 779 F.2d at 387. The defendant's evidence of a good reason for refusing to deal with the plaintiff "must be devoid of circumstances from which it can be inferred that there was a real though subtle purpose of discrimination." Id. If the defendant does so, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason is pretextual. See id.; see also Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir.1999) (citing McDonnell Douglas, 411 U.S. at 804); Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (same). Despite these shifting burdens of production, the ultimate burden of persuasion always remains with the plaintiff. See Adusumilli, 164 F.3d at 362.

The focus of the pretext inquiry is whether the defendant's articulated legitimate reason was honest, not whether it was accurate, wise, or well-considered. See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). In short, pretext means a lie, "and without proof of a lie, no inference of

7

discriminatory motive can be drawn." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001); see also Jackson, 176 F.3d at 983 (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995) ("Pretext in this context means 'a lie, specifically a phony reason for some action.'")).

The Roberts may be able to set forth a prima fascia case of discrimination based on the undisputed evidence presented. It is undisputed that Jerome Roberts belongs to a minority group or that Defendants were aware of that fact. It also is not disputed that the Roberts accepted Defendants' offer to purchase Lot 24 and had the ability to pay the $110,000.00 purchase price. Whether Defendants refused to deal with the Roberts is in contention. Both parties state that they are now willing and always have been willing to close on Lot 24, but only if certain conditions are met. The court will not dwell on this point because even assuming arguendo that the Roberts can set forth a prima fascia case of discrimination, the Roberts' production of evidence does not satisfy the ultimate burden of persuasion.

Defendants have proffered two non-discriminatory reasons for not selling Lot 24 to the Roberts. Defendants' first reason for failing to sell Lot 24 to Roberts was that the conditions set forth in the first Rider, dated April 4, 1999, were not met. The first Rider states that if the plat for Manor II was not recorded by July 1, 1999 either party could cancel the contract by giving written notice. The plat was not recorded by July 1, 1999, it was recorded on December 15, 1999. Defendant through written notice cancelled the contract. Pursuant to the parties written agreement, the failure to record the plat by July 1, 1999 is a legitimate reason for Defendants to have cancelled the contract, it is not discriminatory in nature.

Defendants' second stated reason for not selling the Roberts Lot 24 was the fear of litigation. Defendants claim they were afraid that with the battle that was brewing pertaining to Lot 24's

8

covenants and restrictions would lead to expensive and protracted litigation. As it turned out Defendants were right. Defendants two discriminatory neutral reasons for cancellation of the contract shifts the burden back to the Roberts to show that they are merely a pretext for discrimination.

The Roberts cannot show that Defendants' stated reasons are merely a pretext for discrimination. The Roberts have presented no evidence that Defendants' discriminated or had any intent to discriminate against them. "A 3604 case is never to be made out on the mere suspicion that because the plaintiff's minority status is known to the defendant, the defendant's action rejecting the plaintiff necessarily resulted at least in part from some pre-existing basis" Kaplan, 576 F.Supp. at 59.

Although Defendants' first stated reason for cancelling the contract, the failure to meet the requirements set forth in the April 5, 1999 Rider, may have been a pretextual way to cancel the contract, there is no evidence that it was motivated by discrimination. The Roberts have not presented any evidence supporting their accusations of discrimination, their claims are predicated merely on suspicion and conjecture. Mere speculation and conclusions without factual support are not enough to defeat summary judgment. See Rand, 42 F.3d 1146-47. The Roberts have failed to present any evidence to support their claims or rebuff Defendants' asserted reasons for not selling Lot 24 to them. (See Defs.' Am. Mot. for Summ. J. p. 6; see also Pl.'s Resp. Br. p.8.) The Roberts cannot satisfy the burden of persuasion with the limited facts presented even when viewed in the best light possible. Defendants' motion for summary judgment on Count I is granted.

Having granted Defendants' motion for summary judgment on Count I, the court relinquishes its supplemental jurisdiction over the remaining state law claims brought by the Roberts

9

### III. CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment on Count I of Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 56, is granted. All remaining state claims are dismissed. It is so ordered.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR., Judge

DATED: 5-7-02